FILED
2014 Dec-15  PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY DECOLA and PAMELA DECOLA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO.: |
| ADAMSON FORD, INC., ADAMSON FORD, LLC, and GLENN MARSHALL, | ) ) ) ) | |
| Defendants. | ) ) | |

## NOTICE OF REMOVAL

COME NOW the Defendants, Adamson Ford, Inc., Adamson Ford, LLC and Glenn Marshall, pursuant to 28 U.S.C. Section 1441 et. seq., and file this Notice of Removal of this action from the Circuit Court of Jefferson County, Alabama, where it is now pending under case number CV 2014-904678, to the United States District Court for the Northern District of Alabama, Southern Division, and as grounds therefore, shows as follows:

1.     This action was commenced on November 12, 2014, by the filing of a summons and complaint in the Circuit Court of Jefferson County, Alabama, a court within the Southern Division of the United States District Court for the

Northern District of Alabama.  A copy of all pleadings and process served

upon the Defendants is attached hereto and marked as collective Exhibit "A".

2. In the Complaint, the Plaintiffs alleged that the Defendants, without

authorization and without a permissible purpose, improperly obtained and used

their credit information, in violation of the Fair Credit Reporting Act.  The

Plaintiffs also allege the following state law claims, in connection with the

Defendants' actions in obtaining and using the Plaintiffs' credit information:

(1) violation of Alabama Consumer Identity Protection Act, *Alabama Code* §

13A-8-199; (2) invasion of privacy; (3) negligence and/or wantonness; (4)

negligent and wanton hiring, training, supervision and retention; (5) negligence

and/or wantonness per se; and (6) fraud.

3. The Defendants were first served with and received notice of this civil action

when served with the Summons and Complaint (Exhibit "A") on November 17,

2014, within 30 days from the date of this removal.

4. This case is a Civil Action within the meaning of the Acts of Congress relating

to the removal causes.  The Defendants have filed no pleadings or papers in the

action in State Court and the time in which the Defendants are required by

State law or rules to answer or plead to the Plaintiffs' Complaint has not

expired.  There are no other process, pleadings or orders that were served upon the Defendants, other than contained in Exhibit "A."

5.    This case is properly removable pursuant to 28 U.S.C. Section 1441, 1441(a) because this Court has original jurisdiction of this case under 28 U.S.C. Section 1331.

6.    While the Fair Credit Reporting Act, 15 U.S.C. § 1681p, states that an action to recover for liability under the Act "may be brought in any appropriate United States district court . . . or in any other court of competent jurisdiction", the Eleventh Circuit has held that a Fair Credit Reporting Act action, once started in state court, is removable to federal court.  *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1263-65 (11th Cir. 1998).

7.    This Court, pursuant to 28 U.S.C. § 1367(a), has supplemental jurisdiction over the Plaintiffs' apparent state law claims because the alleged violations of the Fair Credit Reporting Act and the alleged state law claims arise out of a common nucleus of operative facts and should be tried in one action, and, therefore, form part of the same case or controversy.

8.    This Notice of Removal is filed within 30 days of the service of the Summons and Complaint upon the Defendants.

9.    Accordingly, removal of the entire case is proper under 28 U.S.C. § 1441.

10.   Written notice of the filing of this Notice of Removal has been served upon Plaintiffs' counsel and upon the Clerk of the Circuit Court of Jefferson County, Alabama.

11.   The Defendant reserves the right to amend or supplement this Notice of Removal.


WHEREFORE, for the foregoing reasons, the Defendants, Adamson Ford, Inc., Adamson Ford, LLC and Glenn Marshall, pray that this Court will take jurisdiction of this action and issue all necessary orders and process to remove this action from the Circuit Court of Jefferson County, Alabama, to the United States District Court for the Northern District of Alabama, Southern Division.


Respectfully Submitted,

/s/ Jeffrey L. Ingram

/s/ Cassandra H. Kalupa

Jeffrey L. Ingram, ASB-8270-M74J
Cassandra Harris Kalupa, ASB-2841-D52H

4

OF COUNSEL:
GALESE & INGRAM, P.C.
800 Shades Creek Pkwy, Suite 300
Birmingham, Alabama 35209
Telephone:   (205) 870-0663
Facsimile:   (205) 870-0681
E-mail:   jeff@galese-ingram.com
            sandy@galese-ingram.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2014, I electronically filed the above with the Clerk of Court and e-mailed the above and foregoing pleading, to the following:

Robert O. Bryan
Nelson, Bryan & Jones
Bob@nelsonbryanjones.com

Keith McKerall
Nelson, Bryan & Jones
mckerallk@gmail.com

/s/ Cassandra H. Kalupa

_____

Of Counsel

5

# EXHIBIT A

ELECTRONICALLY FILED
11/12/2014 7:01 AM
01-CV-2014-904678.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| ANTHONY DECOLA and<br>PAMELA DECOLA<br><br>Plaintiffs,<br><br>v.<br><br>ADAMSON FORD, INC.,<br>ADAMSON FORD, LLC,<br>GLENN MARSHALL, and<br>Fictitious parties A-F,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   CV-2014-<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

### PRELIMINARY STATEMENT

1.     The Plaintiffs bring this action for damages based upon Defendant's violations of Alabama law and violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (hereinafter referred to as the "FCRA"). Plaintiffs seek actual damages, statutory damages, compensatory damages, punitive damages, costs and attorney fees.

### JURISDICTION

2.     Jurisdiction of this court is conferred by 15 U.S.C. § 1681p, which authorizes a claim under the FRCA to be brought in any court of competent jurisdiction.

3.     Plaintiffs are natural persons and are residents and citizens of the State of Alabama and of the United States. They are "consumers" as defined by § 1681 a(c) of the Act.

4.     The Defendants, Adamson Ford, Inc. and/or Adamson Ford, LLC, (hereinafter collectively referred to as "Adamson Ford") is/are a corporation incorporated under the laws of Alabama and/or a Limited Liability Company organized under the laws of the State of Alabama, doing business in Birmingham, Alabama. Adamson Ford has its principal place of business in Birmingham, Alabama.  Glenn Marshall is an adult citizen of the State of Alabama and at all times relevant hereto was acting as an agent and/or employee of Adamson Ford.  Each and every reference herein to "Adamson Ford," "defendant," "defendants," "employee," or "agent" shall include both Adamson Ford and Glenn Marshall, as well as Fictitious Defendants A-F.

5.     Defendant Adamson Ford is a "user of information" and a "person" as defined in § 1681a and  § 1681n of the Act, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of selling and financing automobiles, as defined in § 1681 of the Act. Fictitious parties A-F are those persons who participated in the wrongful conduct alleged herein, or whose conduct combined and concurred with named defendants to cause the Plaintiffs' damages; who authorized said conduct, or who were responsible for the

hiring, management, supervision, training, of the individuals whose conduct is at issue.

6.  Defendants obtain consumer credit information and consumer credit reports, scores and information regarding creditworthiness of consumers and dispense such consumer credit information reports to third parties such as lending institutions subscribers for monetary compensation.

## STATEMENTS OF FACT

7.  On or about July 5, 6, 7 or 8, 2014, a relative of the Plaintiffs went to Adamson Ford to shop for a vehicle.

8.  On or about July 7 or 8, 2014, Defendant, by and through its employee(s) and/or agent(s), and Fictitious Defendants A-F, procured credit information on Plaintiffs.

9.  Defendants procured plaintiffs' credit information for the purpose of attempting to obtain financing for the lease or purchase of a vehicle for individuals other than the Plaintiffs; that is, Defendants procured and used Plaintiffs' credit information when a family member of the Plaintiffs was shopping for a car at Adamson Ford.

10.  Plaintiffs were not present at the Adamson Ford dealership at the time of the defendant's acquisition of Plaintiff's credit information.

11.  At or before the time that Adamson Ford acquired consumer credit information of the Plaintiffs, Plaintiffs had not given Adamson Ford

authorization to access, obtain or use their personal and consumer credit information.

12. At or before the time that Adamson Ford acquired consumer credit information of the Plaintiffs, Plaintiffs had not given Adamson Ford authorization to possess, obtain or acquire their personal or consumer credit information.

13. At or after the time that Adamson Ford acquired Plaintiffs' credit information, Adamson Ford disseminated the Plaintiffs' consumer credit information to lending institutions.

14. At the time that Adamson Ford disseminated Plaintiffs' consumer credit information to each respective lending institution, Adamson Ford did not have either Plaintiff's authorization to disseminate their consumer credit information to each respective lending institution.

15. At or after the time that Adamson Ford acquired Plaintiffs' credit information, Adamson Ford applied for consumer credit on behalf of the Plaintiffs with several lending institutions.

16. At the time that Adamson Ford applied for consumer credit on behalf of the Plaintiffs, Adamson Ford did not have Plaintiffs' authorization to use their information or to apply for consumer credit on their behalf.

17. After Adamson Ford disseminated Plaintiffs' consumer credit information to various lending institutions, and/or applied for consumer

credit on behalf of Plaintiffs with lending institutions, various lending institutions rejected these applications for credit.

18.    As a result of multiple denials of the aforementioned applications for extensions of consumer credit, Plaintiffs suffered actual damages to be proved at trial.

19.    Plaintiffs seek statutory damages, actual damages, compensatory damages, punitive damages, costs and attorney's fees as a consequence of defendant's wrongful conduct.


## STATEMENT OF CLAIMS

### Count One: Violation of the FCRA for Obtaining Consumer Credit
### Information: Anthony DeCola

20.    Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

21.    For purposes of the events and transactions referenced herein, Plaintiff Anthony DeCola avers that Adamson Ford and fictitious defendants A-F were subject to the provisions of the Fair Credit Reporting Act, 15 U.S.C. Section 1681 et seq. (hereinafter, the "FCRA").

22.    For purposes of the events and transactions referenced herein, Plaintiff Anthony DeCola was a "consumer" as defined by the FCRA.

23.    At the time that Adamson Ford obtained Anthony DeCola's consumer credit information, it did so without Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

24.    At the time that Adamson Ford obtained Anthony DeCola's consumer credit information, it did so negligently in violation of the FCRA.

25.    Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

26.    At the time that Adamson Ford obtained Anthony DeCola's consumer credit information, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

27.    Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in the preceding paragraph; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)    Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count One;

b)    Punitive damages as allowed by the FCRA as to Count One;

c)    Attorney fees; and

d)    costs.

## Count Two: Violation of the FCRA for Using Consumer Credit

## Information: Anthony DeCola

28.    Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

29.    After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Flagship Acceptance, LLC.

30.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

31.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

32.    Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

33.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

34.     Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)     Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Two;

b)     Punitive damages as allowed by the FCRA as to Count Two;

c)     Attorney fees; and

d)     costs.

### Count Three: Violation of the FCRA for Using Consumer Credit Information: Anthony DeCola

35.     Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

36.     After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with BB&T Dealer Finance.

37.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

38.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

39.     Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

40.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

41.     Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)      Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Three;

b)      Punitive damages as allowed by the FCRA as to Count Three;

c)      Attorney fees; and

d)      costs.

## Count Four: Violation of the FCRA for Using Consumer Credit Information: Anthony DeCola

42.     Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

43.     After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Global Lending Services.

44.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

45.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

46.    Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

47.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

48.    Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)    Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Four;

b)    Punitive damages as allowed by the FCRA as to Count Four;

c)    Attorney fees; and

d)    costs.

### Count Five: Violation of the FCRA for Using Consumer Credit

### Information: Anthony DeCola

49.     Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

50.     After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Exeter Finance Corp.

51.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

52.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

53.     Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

54.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

55.     Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)      Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Five;

b)      Punitive damages as allowed by the FCRA as to Count Five;

c)      Attorney fees; and

d)      costs.

### Count Six: Violation of the FCRA for Using Consumer Credit Information:
### Anthony DeCola

56.     Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

57.     After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with 1st Investors Financial Services.

58.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without

Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

59.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

60.    Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

61.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

62.    Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)    Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Six;

b)    Punitive damages as allowed by the FCRA as to Count Six;

c)    Attorney fees; and

d)     costs.

## **Count Seven: Violation of the FCRA for Using Consumer Credit Information: Anthony DeCola**

63.     Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

64.     After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with BBVA Compass.

65.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

66.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

67.     Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

68.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

69.     Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)     Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Seven;

b)     Punitive damages as allowed by the FCRA as to Count Seven;

c)     Attorney fees; and

d)     costs.

### Count Eight: Violation of the FCRA for Using Consumer Credit Information: Anthony DeCola

70.     Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

71.     After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with GE Capital Retail Bank.

72.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

73.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

74.     Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

75.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

76.     Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)      Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Eight;

b)      Punitive damages as allowed by the FCRA as to Count Eight;

c)      Attorney fees; and

d)      costs.

### Count Nine: Violation of the FCRA for Using Consumer Credit Information: Anthony DeCola

77.     Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

78.     After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with AmeriCredit.

79.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

80.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

81.     Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

82.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

83.     Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)     Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Nine;

b)     Punitive damages as allowed by the FCRA as to Count Nine;

c)     Attorney fees; and

d)     costs.

## Count Ten: Violation of the FCRA for Using Consumer Credit

## Information: Anthony DeCola

84.     Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

85.     After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Fifth Third Bank.

86.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

87.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

88.     Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

89.     At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

90.   Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)   Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Ten;

b)   Punitive damages as allowed by the FCRA as to Count Ten;

c)   Attorney fees; and

d)   costs.

## Count Eleven: Violation of the FCRA for Using Consumer Credit Information: Anthony DeCola

91.   Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

92.   After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Prestige Financial.

93.   At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without

Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

94.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

95.    Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

96.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

97.    Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)    Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Eleven;

b)    Punitive damages as allowed by the FCRA as to Count Eleven;

c)    Attorney fees; and

    d)    costs.

## Count Twelve: Violation of the FCRA for Using Consumer Credit Information: Anthony DeCola

98.    Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

99.    After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Consumer Portfolio Services.

100.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

101.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

102.    Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

103.   At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

104.   Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)   Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Twelve;

b)   Punitive damages as allowed by the FCRA as to Count Twelve;

c)   Attorney fees; and

d)   costs.

## Count Thirteen: Violation of the FCRA for Using Consumer Credit Information: Anthony DeCola

105.   Plaintiff Anthony DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

106.    After obtaining Anthony DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with C&F Finance Company.

107.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in the preceding paragraph, it did so without Mr. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

108.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

109.    Plaintiff Anthony DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

110.    At the time that Adamson Ford used Anthony DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

111.    Plaintiff Anthony DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Anthony DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Anthony DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)      Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Thirteen;

b)      Punitive damages as allowed by the FCRA as to Count Thirteen;

c)      Attorney fees; and

d)      costs.

**Count Fourteen: Violation of the FCRA for Obtaining Consumer Credit Information: Pamela DeCola**

112.   Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

113.   For purposes of the events and transactions referenced herein, Plaintiff Pamela DeCola avers that Adamson Ford was subject to the provisions of the Fair Credit Reporting Act, 15 U.S.C. Section 1681 et seq. (hereinafter, the "FCRA").

114.   For purposes of the events and transactions referenced herein, Plaintiff Pamela DeCola was a "consumer" as defined by the FCRA.

115.   At the time that Adamson Ford obtained Pamela DeCola's consumer credit information, it did so without Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

116. At the time that Adamson Ford obtained Pamela DeCola's consumer credit information, it did so negligently in violation of the FCRA.

117. Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

118. At the time that Adamson Ford obtained Pamela DeCola's consumer credit information, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

119. Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in the preceding paragraph; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a) Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Fourteen;

b) Punitive damages as allowed by the FCRA as to Count Fourteen;

c) Attorney fees; and

d) costs.

## Count Fifteen: Violation of the FCRA for Using Consumer Credit

## Information: Pamela DeCola

120.    Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

121.    After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Flagship Acceptance, LLC.

122.    At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

123.    At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

124.    Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

125.    At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

126.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)   Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Fifteen;

b)   Punitive damages as allowed by the FCRA as to Count Fifteen;

c)   Attorney fees; and

d)   costs.

## Count Sixteen: Violation of the FCRA for Using Consumer Credit Information: Pamela DeCola

127.   Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

128.   After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with BB&T Dealer Finance.

129.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without

Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

130.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

131.   Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

132.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

133.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)   Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Sixteen;

b)   Punitive damages as allowed by the FCRA as to Count Sixteen;

c)   Attorney fees; and

d)    costs.

## Count Seventeen: Violation of the FCRA for Using Consumer Credit Information: Pamela DeCola

134.   Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

135.   After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Global Lending Services.

136.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

137.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

138.   Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

139.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

140.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)   Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Seventeen;

b)   Punitive damages as allowed by the FCRA as to Count Seventeen;

c)   Attorney fees; and

d)   costs.

## Count Eighteen: Violation of the FCRA for Using Consumer Credit Information: Pamela DeCola

141.   Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

142.   After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Exeter Finance Corp.

143.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without

Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

144.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

145.   Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

146.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

147.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)   Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Eighteen;

b)   Punitive damages as allowed by the FCRA as to Count Eighteen;

c)   Attorney fees; and

d)    costs.

## Count Nineteen: Violation of the FCRA for Using Consumer Credit

## Information: Pamela DeCola

148.   Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

149.   After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Family Security Credit Union.

150.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

151.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

152.   Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

153.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

154.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)      Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Nineteen;

b)      Punitive damages as allowed by the FCRA as to Count Nineteen;

c)      Attorney fees; and

d)      costs.

### Count Twenty: Violation of the FCRA for Using Consumer Credit Information: Pamela DeCola

155.   Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

156.   After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with BBVA Compass.

157.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without

Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

158.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

159.   Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

160.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

161.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)     Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Twenty;

b)     Punitive damages as allowed by the FCRA as to Count Twenty;

c)     Attorney fees; and

d)    costs.

## Count Twenty-One: Violation of the FCRA for Using Consumer Credit Information: Pamela DeCola

162.   Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

163.   After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Capital One Auto Finance.

164.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

165.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

166.   Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

167.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

168.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)   Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Twenty-One;

b)   Punitive damages as allowed by the FCRA as to Count Twenty-One;

c)   Attorney fees; and

d)   costs.

### Count Twenty-Two: Violation of the FCRA for Using Consumer Credit Information: Pamela DeCola

169.   Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

170.   After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with AmeriCredit.

171.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without

Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

172.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

173.   Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

174.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

175.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)      Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Twenty-Two;

b)      Punitive damages as allowed by the FCRA as to Count Twenty-Two;

c)      Attorney fees; and

d)      costs.

## Count Twenty-Three: Violation of the FCRA for Using Consumer Credit Information: Pamela DeCola

176.   Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

177.   After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Fifth Third Bank.

178.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

179.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

180.   Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

181.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

182.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)   Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Twenty-Three;

b)   Punitive damages as allowed by the FCRA as to Count Twenty-Three;

c)   Attorney fees; and

d)   costs.

### Count Twenty-Four: Violation of the FCRA for Using Consumer Credit Information: Pamela DeCola

183.   Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

184.   After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Prestige Financial.

185.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

186.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

187.   Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

188.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

189.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

    a)    Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Twenty-Four;

    b)    Punitive damages as allowed by the FCRA as to Count Twenty-Four;

    c)    Attorney fees; and

    d)    costs.

## Count Twenty-Five: Violation of the FCRA for Using Consumer Credit Information: Pamela DeCola

190.  Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

191.  After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with Consumer Portfolio Services.

192.  At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

193.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

194.   Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

195.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

196.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)   Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Twenty-Five;

b)   Punitive damages as allowed by the FCRA as to Count Twenty-Five;

c)   Attorney fees; and

d)   costs.

**Count Twenty-Six: Violation of the FCRA for Using Consumer Credit**

**Information: Pamela DeCola**

197.   Plaintiff Pamela DeCola adopts and incorporates each and every paragraph above as if fully set forth herein, and further avers as follows:

198.   After obtaining Pamela DeCola's consumer credit information, Adamson Ford used said information to apply for consumer credit with C&F Finance Company.

199.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in the preceding paragraph, it did so without Mrs. DeCola's authorization and without a permissible purpose in violation of Section 1681 of the FCRA.

200.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so negligently in violation of the FCRA.

201.   Plaintiff Pamela DeCola claims actual and statutory damages as a result of the violation or failure, whichever damages are greater, as well as attorney's fees and costs.

202.   At the time that Adamson Ford used Pamela DeCola's consumer credit information as described in this Count, it did so willfully, or under false pretenses or knowingly without a permissible purpose.

203.   Plaintiff Pamela DeCola claims actual and statutory damages, whichever damages are greater, and attorney's fees and costs, for the violation or failure referenced in this Count; additionally, Plaintiff Pamela DeCola claims punitive damages as the Court may allow.

**THEREFORE**, Plaintiff Pamela DeCola prays that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)      Statutory damages or actual damages, whichever is greater, as allowed by the FCRA as to Count Twenty-Six;

b)      Punitive damages as allowed by the FCRA as to Count Twenty-Six;

c)      Attorney fees; and

d)      costs.

### Count Twenty-Seven: Violations of the
### Alabama Consumer Identity Protection Act

204.   Plaintiffs Anthony and Pamela DeCola adopt and incorporate each and every paragraph above as if fully set forth herein, and further aver as follows:

205.   In addition to the original acquisition of each of the two plaintiff's consumer information prior to obtaining and using plaintiff's credit information, each of the foregoing referenced 26 acts of obtaining and using

the plaintiffs' information also constitute violations of the Alabama Consumer Protection Act, Alabama Code Sec. 13A-8-192 et seq.

206.   Adamson Ford, by and through its employees and/or agents, obtained or accessed identifying information that would assist in accessing plaintiffs' financial resources, or obtaining benefits of the DeColas, in violation of said statute.

207.   As set forth above, defendant committed in at least 28 separate incidents; therefore; pursuant to Ala. Code Sec. 13A-8-199, plaintiffs claim $5,000 for each incident (or three times actual damages, whichever is greater), or an amount of at least $140,000.00, plus reasonable attorney's fees and costs.

**THEREFORE**, Plaintiffs Anthony and Pamela DeCola pray that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)    Statutory damages or triple actual damages, whichever is greater, in an amount of at least $140,000.00, as allowed by the Alabama Consumer Identity Protection Act as to Count Twenty-Seven;

b)    Attorney fees; and

c)    costs.

## Count Twenty-Eight: Invasion of Privacy

208. Plaintiffs Anthony and Pamela DeCola adopt and incorporate each and every paragraph above as if fully set forth herein, and further aver as follows:

209. The wrongful conduct described herein above constituted an invasion of the plaintiff's privacy.

210. Adamson Ford, by and through its employees and/or agents, wrongfully intruded into the Decolas' private affairs in such manner as to outrage and cause mental suffering, shame or humiliation both as to any person of ordinary sensibilities and specifically as to the DeColas, who have suffered embarrassment, humiliation, shame, inconvenience, anxiety, worry, anger, frustration, and other mental and emotional harm; they have suffered damage to their creditworthiness, and other actual damages, actual harm, and economic harm.

211. Adamson Ford, by and through its employees and agents, wrongfully appropriated Plaintiffs' personal financial information for commercial use and with a profit motive, in a manner that would be highly offensive to a reasonable person.

212. Adamson Ford, by and through its employees and agents, wrongfully disseminated Plaintiffs' personal financial information to

numerous potential lenders for commercial use and with a profit motive, in a manner that would be highly offensive to a reasonable person.

213.   Adamson Ford, by and through its employees and agents, acted in a manner characterized by malice, wantonness, oppression or fraud; therefore, in addition to compensatory damages, Plaintiffs also claim punitive damages.

**THEREFORE**, Plaintiffs Anthony and Pamela DeCola pray that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)   Compensatory damages;

b)   Punitive damages; and

c)   costs.

## Count Twenty-Nine: Institutional Negligence and Wantonness

214.   Plaintiffs Anthony and Pamela DeCola adopt and incorporate each and every paragraph above as if fully set forth herein, and further aver as follows:

215.   Adamson Ford, at and before the dates of the occurrence of the wrongful conduct described herein, was subject to a duty to maintain reasonable practices, protocols, procedures, and rules; and otherwise was subject to a duty to engage in reasonable business practices to safeguard against the types of conduct alleged herein, so as to prevent its salesmen, finance managers, and other employees from engaging in the type of conduct

alleged herein and specifically to prevent the wrongful acquisition of individuals' personal information and financial information. Adamson Ford failed to have adequate policies, practices, protocols, or rules in force and effect at and before the time of the occurrence of the wrongful conduct alleged herein; or if such policies, practices, protocols or rules existed at the time, Adamson Ford failed to implement or act upon them in order to prevent the types of harm suffered by the Plaintiffs, thus causing the Plaintiffs to suffer the harms and damages as described herein above.

216.   Adamson Ford, at and before the dates of the occurrence of the wrongful conduct described herein, was subject to a duty to maintain reasonable practices, protocols, procedures, and rules; and otherwise was subject to a duty to engage in reasonable business practices to safeguard against the types of conduct alleged herein, so as to identify, discern, and responsibly deal with an employee's wrongful acquisition and use of individuals' personal and financial information.  Adamson Ford failed to have adequate policies, practices, protocols, in force and effect at and before the time of the occurrence of the wrongful conduct alleged herein; or if such policies, practices, protocols or rules existed at the time, Adamson Ford failed to implement or act upon them in order to prevent the types of harm suffered by the Plaintiffs, thus causing the plaintiffs to suffer harms and damages.

217.   Adamson Ford failed to have adequate policies, rules, protocols or practices in place to provide checks and balances or safeguards among the sales personnel and credit manager to allow the credit manager or other employees to discern when a salesman or other employee had wrongfully appropriated or used a consumer's personal information or financial information for an impermissible purpose, or failed to adequately implement or enforce existing policies, procedures, protocols or rules at the time of the incidents alleged herein, resulting in harms and damages to the Plaintiffs.

218.   Said breaches of duty were negligent, reckless, willful and/or wanton, and/or were characterized by reckless or conscious disregard of the probable consequences of the failures, misfeasance, or nonfeasance alleged herein.

219.   The negligent and/or wanton conduct of Adamson Ford, its agents and employees combined and concurred with the other acts of negligence and wantonness described herein in other counts to proximately cause the injuries, damages and harms that the DeColas suffered.

220.   Plaintiffs claim both compensatory and punitive damages as a result of the defendant's various breaches of duty.

THEREFORE, Plaintiffs Anthony and Pamela DeCola pray that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)      Compensatory damages;

b)      Punitive damages; and

c)      costs.

## Count Thirty: Negligent and Wanton Hiring, Training, Supervision and Retention

221.   Plaintiffs Anthony and Pamela DeCola adopt and incorporate each and every paragraph above as if fully set forth herein, and further aver as follows:

222.   Adamson Ford, at and before the dates of the occurrence of the wrongful conduct described herein, was subject to a duty to adequately hire, train, supervise, train, manage, and retain its employees, sales personnel, finance managers, and other agents and employees so as to prevent the types of conduct and occurrence of harms and damages alleged herein; and defendant's failure(s) to do so proximately resulted in the DeColas' harms and damages described herein.

223.   Said breaches of duty were negligent, reckless, willful and/or wanton, and/or were characterized by reckless or conscious disregard of the probable consequences of the failures, misfeasance, or nonfeasance alleged herein.

224.   The negligent and/or wanton conduct of Adamson Ford, its agents and employees combined and concurred with the other acts of

negligence and wantonness described herein in other counts to proximately cause the injuries, damages and harms that the DeColas suffered.

225.   Plaintiffs claim both compensatory and punitive damages as a result of the defendant's various breaches of duty.

**THEREFORE**, Plaintiffs Anthony and Pamela DeCola pray that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)     Compensatory damages;

b)     Punitive damages; and

c)     costs.

### Count Thirty-One:  Negligence and Wantonness

226.   Plaintiffs Anthony and Pamela DeCola adopt and incorporate each and every paragraph above as if fully set forth herein, and further aver as follows:

227.   Adamson Ford, by and through its agents and employees, including but not limited to its sales personnel, finance managers, management and other employees negligently and/or wantonly acquired and used Plaintiffs' personal and/or financial information.

228.   Said breaches of duty were negligent, reckless, willful and/or wanton, and/or were characterized by reckless or conscious disregard of the probable consequences of the failures, misfeasance, or nonfeasance alleged herein.

229.   The negligent and/or wanton conduct of Adamson Ford, its agents and employees combined and concurred with the other acts of negligence and wantonness described herein in other counts to proximately cause the injuries, damages and harms that the DeColas suffered.

230.   Plaintiffs claim both compensatory and punitive damages as a result of the defendant's various breaches of duty.

**THEREFORE**, Plaintiffs Anthony and Pamela DeCola pray that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)     Compensatory damages;

b)     Punitive damages; and

c)     costs.

### <u>Count Thirty-Two:  Negligence and Wantonness Per Se</u>

231.   Plaintiffs Anthony and Pamela DeCola adopt and incorporate each and every paragraph above as if fully set forth herein, and further aver as follows:

232.   Adamson Ford, by and through its agents and employees, including but not limited to its sales personnel, finance managers, management and other employees negligently violated 42 U.S.C. Sec. 408, including but not limited to Sec. 408(a)(7)(B) and 408(a)(8), by wrongfully using or disclosing the Plaintiffs' social security numbers, proximately causing the injuries and damages referenced herein.

233.   Said violations of law constitute negligence per se and/or wantonness per se.

234.   The negligence per se and/or wantonness per se of Adamson Ford, its agents and employees combined and concurred with the other acts of negligence and wantonness described herein in other counts to proximately cause the injuries, damages and harms that the DeColas suffered.

235.   Plaintiffs claim both compensatory and punitive damages as a result of the defendant's various breaches of duty, negligence per se and wantonness per se.

**THEREFORE**, Plaintiffs Anthony and Pamela DeCola pray that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)      Compensatory damages;

b)      Punitive damages; and

c)      costs.

### Count Thirty-Three: Fraud

236.   Plaintiffs Anthony and Pamela DeCola adopt and incorporate each and every paragraph above as if fully set forth herein, and further aver as follows:

237.   Adamson Ford, by and through its agents and employees, including but not limited to its sales personnel, finance managers, management and other employees made material false representations to

third parties when disseminating Plaintiffs' credit and personal information to potential lenders.  Specifically, by applying Plaintiffs for credit, Defendants, actually or implicitly represented to these lending institutions that:

a)      Plaintiffs had authorized the acquisition and/or use of their personal information and financial information;

b)      That Plaintiffs desired to be considered for an automotive loan or loans;

c)      That Plaintiffs desired to be approved for an automotive loan.

238.  Defendants knew or should have known, or should have reasonably anticipated that, these false representations to third parties would result in numerous credit inquiries by lenders into Plaintiffs' credit history and evaluations of their creditworthiness.

238.  Defendants knew or should have known, or should have reasonably anticipated that, these false representations to third parties would likely affect Plaintiffs' credit history and/or credit scores.

239.  As a proximate consequence of defendants' false representations to third parties, Plaintiffs were injured, damaged and harmed as set forth herein above; their credit rating was damaged and their credit profile was negatively affected.

240.  The representations made by defendants to third parties were made innocently, mistakenly, negligently, recklessly, or in a reckless

disregard of the rights of the plaintiffs; or were made in malicious or willful manner.

241.   Said   third   parties   justifiably   relied   upon   said   false representations to the Plaintiffs' detriment, proximately causing the injuries, harms and damages referenced herein.

242.   Plaintiffs claim both compensatory and punitive damages of the defendants.

**THEREFORE**, Plaintiffs Anthony and Pamela DeCola pray that the court grant, against Adamson Ford and Fictitious Parties A-F:

a)   Compensatory damages;

b)   Punitive damages;

c)   Attorney's fees; and

c)   costs.

/s/ Robert O. Bryan
Robert O. Bryan (BRY022)
Nelson, Bryan & Jones
P. O. Box 2309
Jasper, AL 35502
(205) 387-7777
Bob@nelsonbryanjones.com

/s/ Keith McKerall
Keith McKerall (MCK044)
Nelson, Bryan & Jones
P. O. Box 2309
Jasper, AL 35502
(205) 387-7777
mckerallk@gmail.com

Serve Defendants at:

Adamson Ford, Inc.
c/o William B. Israel, Registered Agent
1922 Second Ave. South
Birmingham, AL 35233

Adamson Ford, LLC
c/o William B. Israel, Registered Agent
1922 Second Ave. South
Birmingham, AL 35233

Glenn Marshall
c/o Adamson Ford
1922 Second Ave. South
Birmingham, AL 35233

ELECTRONICALLY FILED
11/12/2014 7:01 AM
01-CV-2014-904678.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

ANTHONY DECOLA and )
PAMELA DECOLA )
)
    **PLAINTIFFS,** )
)
**VS.** )
)    **CASE NO.:**
)
ADAMSON FORD, INC., )
ADAMSON FORD, LLC, and )    **CV 2012-900345**
GLENN MARSHALL )
)
    **DEFENDANTS.** )
)

## PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

Come now the Plaintiffs, Tony DeCola and Pam DeCola, and propound the following interrogatories and requests for production of documents to be answered within the time provided for under the Alabama Rules of Civil Procedure:

<u>Definitions</u>

(a)    "Incident" refers to the circumstances and events surrounding the events, transactions and occurrences alleged in the complaint.

(b)    "You" refers to Adamson Ford, Glenn Marshall, and Adamson Ford agents, officer, managers, employees, and investigators; its insurance companies, their agents and employees, and anyone else acting on behalf of defendants.

©    "Person" includes a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.

(d)    "Document" and "documents" shall mean all documents subject to discovery under the *Alabama Rules of Civil Procedure*, and shall include, without limitation, every original and non-identical copy of each and every paper, document (include blind copies),

letter, telegram, teletype, telex, telecopy, facsimile transmission, e-mail, credit authorization, credit reporting information, dealer video footage, text message, social media post, drawing, picture, photograph, negative, slide, movie, film, visual or audio transcription or record, memorandum, sketch, charter, report, note (including but not limited to notes used to prepare any letter, memorandum, report, or other document as herein defined), contract, agreement, change order, form, work sheet, memorandum or tape recording of telephone conversation or other conversation, witness (including, but not limited to potential witnesses) interview, sound recording, sound recording transcription, engineering study, cross-section, plan, expert analysis, diary, journal, ledger, work memorandum, report of investigation and/or inspection, file memorandum, exhibit, attachment, draft, certificate, chart, table, testimony, transcript of testimony, affidavit, printed readable material, and any and all other means of storage and/or transmission of human intelligence.

(e)    "Correspondence" shall mean any document carried by the United States Mail, the United States Postal Service, any private courier service, or transferred or transmitted in any manner, and includes e-mail, text messages, and social media posts.

## Interrogatories

1.    State the name, address, job title and telephone number of each individual:

(a)    who was involved in the marketing, sale, pre-sale, showing, lease, pre-lease, test drive, conversations, communications, purchase, negotiation, credit pull, credit evaluation, credit check, financing, attempted financing, or communication with any relative, person, credit reporting institution, lender, or potential lender on or about July 5, 6, 7 or 8 pertaining to the matters alleged in the complaint, as well as pertaining to Anthony DeCola's

subsequent call or calls and/or visit to the dealership regarding the dealership's credit inquiries/credit applications.

(b)     Describe his or her conduct, activity, and role (including a description of all conversations) in the transactions and events described in, preceding and following the conduct described in the complaint and/or which are the subject matter of the preceding interrogatory 1(a).

©       who (or anyone acting on your behalf) has knowledge of the incident.

2.      For each of your employees physically present at the time and place of the incident, please state:

3.      Have you or anyone acting on your behalf interviewed any individual concerning the incidents, events and transactions described in the complaint? If so, for each individual, state:

(a)     the name, address, and telephone number of the individual interviewed;

(b)     the date of the interview;

©       the name, address, and telephone number of the person who conducted the interview.

4.      Have you or anyone acting on your behalf obtained a written or recorded statement from any individual concerning, surrounding or touching upon the incident(s) described in the complaint?  If so, for each statement, state:

(a)     the name, address, and telephone number of the individual from whom the statement was obtained;

(b)     the name, address, and telephone number of the individual who obtained the statement;

©       the date the statement was obtained;

(d)     the name, address, and telephone number of each person who has the original of the statement or a copy.

5.      How did Adamson Ford, its employees and/or agents originally obtain, maintain, store and possess the Plaintiffs' social security numbers, credit and financial information?

6.      Do you or anyone acting on your behalf know of any photographs, films, or videotapes depicting any place, object, or individual concerning the plaintiff's allegations, including but not limited to video footage of the DeCola's family members' visit to Adamson Ford, the financing, negotiations, or conversations with dealership personnel? If so, state:

(a)     the number of photos or tapes;

(b)     the places, objects, or persons photographed, filmed, or taped;

©       the name, address, and telephone number of the individual taking the photos or tapes;

(d)     the name, address, and telephone number of each person who has (or had) the original or a copy.

(e)     the name, address , title, position, employer, and telephone number of each person who ever viewed the video footage or images or recordings, including the date and time that he, she or they viewed it.

7.      Did you or anyone acting on your behalf cause an investigation to be conducted at any time in connection with the subject matter of this action? If so, please state for each such investigation:

(a)     the date of each investigation;

(b)     where the investigation was made;

©     the names of the persons conducting such investigation;

(d)     the names and capacities of all persons present or contacted at any time during the investigation.

8.     Regarding any notice to upper management, owners, or risk management personnel (other than your insurance company) of the events surrounding the matters alleged in the complaint, state:

(a)     The date that notice was transmitted;

(b)     The identity of the person (including job/title/employer) who transmitted notification.

( c)     The manner in which notice was transmitted (phone, fax, internet, letter, etc.).

9.     Regarding any notice to your liability or other insurance carrier of the plaintiff's events and transactions described in the complaint, state:

(a)     The date that notice was transmitted;

(b)     The identity of the person (including job/title/employer) who notified the carrier.

( c)     The manner in which notice was transmitted (phone, fax, internet, letter, etc.).

10.     Do you contend that any other person or business entity is responsible in any way, to any extent, for plaintiff's injuries, harms and damages?  If so, please identify said person or entity and state each an every fact in support of your believe that they should be held liable.

11.     Did any person or entity engage in any post-event remedial measures or modification/implementation of measures (including policies, practices,

procedures or rules of any kind, termination of any employee, reprimand or demerit of any employee) after the occurrence of the events and transactions described in the complaint? If so, describe in detail.

12. Why was Anthony DeCola's credit run?

13. Why was Pamela DeCola's credit run?

14. State the date, time, and substance of any conversations that any dealership personnel had with the DeCola's relatives when they came to the dealership to consider acquiring a vehicle (on or about July 5, 6,7, or 8 2014).

15. State the date, time, and substance of any conversations that any dealership personnel had with the Plaintiffs regarding the events, transactions and occurrences described in the complaint. (on or about July 5, 6,7, or 8 2014).

16. Did the dealership, or any of its employees, salesmen or finance personnel have authorization to conduct a credit inquiry (that is, to run or pull Plaintiffs' credit) on the date and at the time that the alleged credit inquiries were made? If so, produce all documents pertaining to any such purported authorization.

17. List each case, claim, dispute, lawsuit or other situation in the five years preceding the events, transactions and occurrences described in the complaint in which there was any allegation of violations of the Fair Credit Reporting Act or other violation of any consumer privacy law.

18. State the names of all individuals who have an (a) ownership interest (b) serve as officers or directors ( c) manage, control or operate this dealership (or the corporation/entity that owns/manages/operates the facility.

19. State who was responsible for hiring, training and supervising dealership

employees and staff in handling credit pulls, credit runs, and financing matters.

20.   If any software or computer interface was used to process the credit information, credit applications and/or financing inquiries made on Anthony and Pamela DeCola, state the type of software/hardware, version, date of implementation, platform, and types of updates and upgrades made to the system after its original acquisition and implementation.

21.   Describe defendants' information retention and disposal policies for information pertaining to previous customers.

22.   Describe the types of insurance coverage, limits, deductibles, self-insured retention, coverage per occurrence, and total coverage of any insurance policies that may provide coverage for this matter, including any primary insurance, secondary insurance, and/or reinsurance.

23.   Identify the person affiliated with Adamson Ford who has the most knowledge of hiring, firing, training, monitoring, disciplining, supervising, and retaining employees, including employees such as Glenn Marshall and/or the finance manager who may have participated in running Plaintiffs' credit.

24.   Identify the person affiliated with Adamson Ford who has the most knowledge of the conception, creation, compilation implementation, management, control, dissemination and/or training, in the areas of compliance with the FCRA, with similar consumer privacy law, privacy policies, and related rules, policies, practices, and protocols.

25.   If Glenn Marshall or any other employee who had anything to do with the events, transactions or occurrences described in the complaint is no longer

employed by Adamson, state his or her current address, employer, and last known address, phone number, secondary contacts, emergency contacts, and any other information that might assist in locating said persons.

26.   State the employment history of Glenn Marshall and each other employee (such as finance managers, etc.) who had anything to do with the events, transactions, or occurrences described in the complaint.

## Requests

Please produce any and all documents relating or pertaining in any way to:

1.   Incident reports, investigative information, statements or other memoranda and information relating to the events, occurrences, communications and transactions alleged in the complaint;

2.   Video of the events, transactions, conversations, communications pertaining to the matters described in the complaint.

3.   Defendant's rules, regulations, policies, practices, protocols, procedures and all training materials, training and educational programs for handling consumer credit, financing, running/pulling consumer credit, making credit inquiries, processing credit applications, and dealing with potential lenders and credit reporting agencies.

4.   Defendant's rules, regulations, policies, practices, protocols, procedures and all training materials, training and educational programs for possessing, storing, maintaining, and disposing of personal or financial information of former customers such as Anthony and/or Pamela DeCola.

5.   All statements either written, audio taped, videotaped and/or e-mails of any person who had anything to do with the events, transactions, and

communications described in the complaint.

6.    Correspondence to or from any insurance company, or among attorneys for the plaintiff and defendants, or to or from any third party , as to any employee or agent of defendant, the plaintiffs and/or third parties or other correspondence relating to the matters alleged in the complaint, excluding any information protected by the attorney/client privilege.

7.    All documents whereby management, owners, or risk management was notified of the events, transactions and occurrences described in, or related to, the matters described in the complaint.

8.    All documents whereby your liability carrier was notified of the events and/or actual or potential violations of law and/or of the matters described in the complaint.

9.    Personnel files for Glenn Marshall and any other sales personnel, finance managers, or other employees who had anything to do with the events, transactions, and occurrences described in the complaint. This request includes but is not limited to pre-hire background checks, inquiries, investigations.

10.    Training materials for each employee referenced in the preceding interrogatory regarding consumer credit issues, credit reporting, and obtaining and using consumer information such as credit information, personal data, and social security numbers; as well as for the duties, responsibilities, and role of management in supervising, monitoring, managing, and directing other employees.

11.    Manuals, instructions, books, information, guidelines and other data

regarding the use of any software or electronic platforms for processing consumer credit, consumer financing, credit information, and lending/lenders.

12.   A copy of any insurance policies, including declarations pages, summaries, and complete policies, as well as any bond or fidelity bond, for any policy of insurance or bond that may provide coverage in this matter.

13.   A list of each and every witness exhibit you intend to offer or use at the trial of this case.

14.   Each article or thing defendant intends to offer or use in the trial of this cause to demonstrate, illustrate, aid or assist the testimony of any witness, including models or facsimiles or subjects or articles.

15.   All documents and all information in defendants' possession relating or pertaining to the plaintiffs (and to the family members who were shopping for a car at Adamson which was associated with the alleged violations of law).

16.   All documents bearing either of the plaintiffs' signatures.

17.   All documents bearing the plaintiffs' relatives' (the family members who were shopping for a car at Adamson which was associated with the alleged violations of law).

18.   All documents and information regarding the potential or actual sale, lease, financing, attempted financing, and/or credit inquiries for the vehicle/deal/people that are associated with the events, transactions, and/or occurrences described in the complaint.

19.   All complaints, lawsuits, correspondence, and information pertaining to consumer complaints, notices, or violations referenced in interrogatory

number 17 above.

20. All information provided to or received from any expert who is retained to testify this lawsuit, including all Rule 26 information and his or her CV.

21. All documents, materials, and information relating or pertaining to the defendants' or their employees' compliance with the Fair Credit Reporting Act and other privacy laws.

22. A copy of defendants' privacy policies.

23. A copy of any Adamson Ford Mission Statement or similar statement of the company's (and/or its employees') business practices, ideals, ethics, honesty, or character.

24. Personnel handbooks, manuals, rules, practices, protocols and procedures that were in force and effect at the time of the events described in the complaint, for each employee who had anything to do with the matters pertaining to this lawsuit.

/s/ Keith McKerall
Keith McKerall
Nelson, Bryan & Jones
P.O. Box 2309
Jasper, AL 35502
(205) 387-7777
mckerallk@gmail.com

PLEASE SERVE THE FOREGOING DISCOVERY
WITH THE SUMMONS AND COMPLAINT



# NOTICE TO CLERK

### REQUIREMENTS FOR COMPLETING SERVICE BY
### CERTIFIED MAIL OR FIRST CLASS MAIL

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
ANTHONY DECOLA ET AL V. ADAMSON FORD, INC. ET AL

01-CV-2014-904678.00

To:  CLERK BIRMINGHAM
clerk.birmingham@alacourt.gov

TOTAL POSTAGE PAID: $28.50

Parties to be served by Certified Mail - Return Receipt Requested

ADAMSON FORD, INC.                                    Postage: $9.50
C/O WILLIAM B. ISRAEL
1922 SECOND AVE. SOUTH
BIRMINGHAM, AL 35233

ADAMSON FORD, LLC                                     Postage: $9.50
C/O WILLIAM B. ISRAEL
1922 SECOND AVE. SOUTH
BIRMINGHAM, AL 35233

GLENN MARSHALL                                        Postage: $9.50
C/O ADAMSON FORD
1922 SECOND AVE. SOUTH
BIRMINGHAM, AL 35233

Parties to be served by Certified Mail - Restricted Delivery - Return Receipt Requested

Parties to be served by First Class Mail

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL US

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

CV-2014-904678
S/C
D-1

Postmark Here

Sent To
Adamson Ford, Inc.
Street & Apt. No., or PO Box No.
City, State, ZIP+4

PS Form 3800, July 2014                     See Reverse for Instructions

7014 1820 0001 6146 2605

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ADAMSON FORD, INC.
C/O WILLIAM B. ISRAEL
1922 SECOND AVE. SOUTH
BIRMINGHAM, AL 35233

CV-2014-904678   S/C   D-1

2. Article Number
(Transfer from service label)

7014 1820 0001 6146 2605

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                          ☐ Agent
                           ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
   ☑ Certified Mail®     ☐ Priority Mail Express™
   ☐ Registered          ☑ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)     ☐ Yes

PS Form 3811, July 2013        Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | CV-2014-904678 |
| Return Receipt Fee (Endorsement Required) | S/C |
| Restricted Delivery Fee (Endorsement Required) | D:2 |
| Total Postage & Fees | $ |

Postmark Here

Sent To  Adamson Ford, LLC

Street & Apt No., or PO Box No.

City, State, ZIP+4

PS Form 3800, July 2014                    See Reverse for Instructions

7014 1820 0001 6146 2629

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ADAMSON FORD, LLC
C/O WILLIAM B. ISRAEL
1922 SECOND AVE. SOUTH
BIRMINGHAM, AL 35233

CV-2014-904678   S/C      D:2

2. Article Number
(Transfer from service label)      7014 1820 0001 6146 2629

PS Form 3811, July 2013       Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☑ Certified Mail®    ☐ Priority Mail Express™
☐ Registered         ☑ Return Receipt for Merchandise
☐ Insured Mail       ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | CV-2014-904678 |
| Return Receipt Fee (Endorsement Required) | S/C |
| Restricted Delivery Fee (Endorsement Required) | D:3 |
| Total Postage & Fees | $ |

Postmark Here

Sent To  Glenn Marshall
Street & Apt. No., or PO Box No.
City, State, ZIP+4

PS Form 3800, July 2014          See Reverse for Instructions

7014 1820 0001 6146 2612

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GLENN MARSHALL

C/O ADAMSON FORD
1922 SECOND AVE. SOUTH

BIRMINGHAM, AL 35233

CV-2014-904678   S/C   D:3

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)  |  C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail®    ☐ Priority Mail Express™
☐ Registered    ☑ Return Receipt for Merchandise
☐ Insured Mail    ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7014 1820 0001 6146 2612

PS Form 3811, July 2013    Domestic Return Receipt